IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARISEE GARDNER, *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. H-08-0129 |
| MICHAEL ASTRUE, *Defendant.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability and supplemental income benefits are Plaintiff's Motion for Summary Judgment (Docket Entry No. 13) and Defendant's Motion for Summary Judgment (Docket Entry No. 14). The Court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's motion, and **REMANDS** this case to the administrative law judge for further proceedings not inconsistent with this opinion.

### I. CASE BACKGROUND

#### A. Procedural Background

Plaintiff[1] filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration

---

[1] Plaintiff is identified at the hearing as Charisse Conley and Charisse Gardner. Tr. 602-03. She testified that she married Jorge Gardner after she filed her claim. Tr. 604.

("Commissioner") regarding her claims for disability and supplemental income benefits under Title II of the Social Security Act ("the Act").

Plaintiff filed her application for disability and supplemental income benefits on May 28, 2003, claiming that she became disabled due to numerous impairments on January 1, 2003. (Docket Entry No. 13, p. 4.) At a hearing held on October 24, 2006, the administrative law judge ("ALJ") heard testimony from Plaintiff, her husband, and a vocational expert ("VE"). In his decision issued on November 11, 2006, the ALJ found that Plaintiff had severe impairments of depressive disorder/post-traumatic stress disorder, musculoskeletal back pain, carpal tunnel syndrome, non-insulin dependant diabetes, and obesity. Tr. 25. The ALJ further found that Plaintiff retained a residual functional capacity ("RFC") to perform her past work as a parole officer and case worker, and was not disabled. Tr. 29.

The Appeals Council denied Plaintiff's request for review. Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of this Court's review.

**B.     Factual Background**

At the ALJ hearing held October 24, 2006, Plaintiff testified that she was thirty-four years old and had a bachelor's degree is criminal justice. Tr. 605. She last worked in a quasi-security job at a K-Mart store. Tr. 606. Her primary prior employment had been as a correctional officer, case worker, and parole officer with the Texas Youth Commission (TYC). Tr. 607.

Plaintiff reported that her diabetes is uncontrolled by oral medications, and that she takes medication for high blood pressure. Tr. 608-09. She complained of wrist pain from bilateral carpal tunnel syndrome, chronic neck pain, and bone spurs on her feet. Tr. 610. She was examined by a psychologist in 2003 and treated for depression, pain management, and post-traumatic syndrome from a motor vehicle accident in 2002. Tr. 611. She has not received any mental health treatment since 2003. *Id.*

Plaintiff reported that she can sit comfortably for five or ten minutes, but cannot tolerate standing. She can walk two hundred feet and lift less than five pounds. Tr. 612. She is currently studying Spanish, and attends a college class twice a week at Sam Houston State University. Tr. 613. She is also pursuing two on-line classes through the university for certification in Spanish. Tr. 614. She uses a computer at the university, which is located a block from her home. Tr. 617. She believes that, unless her hand and neck pain is alleviated, she will not be able to complete the certification. Tr. 615-16. Plaintiff stated that she was struck by an eighteen-wheeler truck on January 14, 2002, and settled her personal injury claim in March of 2004. She claims that, because the settlement no longer covers her medical bills, she was unable to continue her counseling and therapy sessions. Tr. 616.

Plaintiff began working for TYC following her graduation from college in 1994. Tr. 620. She last worked for the TYC in January of 2002, and had attained the promotional level of parole officer. Tr. 620A. As a parole officer, she investigated and monitored juveniles after their release from TYC. Tr. 621-22. Plaintiff testified that she loved her work, and

stopped only because of the motor vehicle accident. Tr. 623. Her neck, head, arms, wrists, knee, ankle, and back were injured in the accident. Tr. 624. She weighed 231 pounds in 2002, and weighed 298 as of the instant hearing in 2006. *Id.* She has consulted a doctor and attempted to lose weight. Tr. 625. Following the accident, she attended pain management sessions, took medications, and was given cortisone injections for her neck and wrists. *Id.* The cortisone injections caused weight gain. Tr. 626. She was diagnosed with diabetes in 1998, but stopped treatment for the condition in April of 1999. *Id.*

At the hearing, Plaintiff complained of numbness and pain in her hands and wrists, and stated that they "fall asleep." *Id.* At times, she cannot turn door knobs, and typing on a computer causes such pain that she needs to stop and rest after fifteen minutes. Tr. 627. It is difficult for her to write with a pencil or pen, and she must stop and rest after writing for five minutes. She testified that three doctors have suggested surgical repair of her carpal tunnel syndrome, a procedure that would be paid by the State. Tr. 628. She has worn bilateral wrist splints for the past two years, which reduces her hand function and limits her driving to two miles. Tr. 629. Her husband does most of the driving. Tr. 633. She drops objects weighing over one pound, becomes short of breath while walking up stairs, and gets muscle spasms in her back. Her diabetes causes her feet to swell and hurt, and she must rest and elevate them. *Id.* While at home, she elevates her feet "all day" for eight hours, and her back and neck pain causes her to lie down two to six hours every day. Tr. 631, 635. She complains of depression, with outbursts, crying spells, and anger. She has no friends, and

she and her husband do not go out or socialize. Tr. 632. Her husband is a minister to a small congregation of fifteen members, and she sits in on Bible study meetings held at their home. Tr. 633.

She testified that a physician assistant has seen her on a monthly basis over the past nine months. Tr. 634. He checks her vital signs and breathing, examines her ears, hands, and feet, monitors her diabetes, and orders blood work every three months. *Id.* She takes ibuprofen every eight hours for headaches. She claims that because pain keeps her in bed all day, she misses at least fifteen work days per month. Tr. 636. Before leaving her TYC employment, she had been absent at least two weeks per month for two years. *Id.*

Plaintiff's husband briefly testified that they had been married for a year and three months, and that his testimony would be the same as that given by Plaintiff. Tr. 637.

According to the VE, Plaintiff worked as a hotel audit clerk from 1992 to 1994, a sedentary semi-skilled occupation. Tr. 638. She then worked for two years as a youth activities supervisor, a light, semi-skilled occupation. Afterwards, Plaintiff worked with the TYC in medium, semi-skilled and light, skilled employment. For three months in 2003, she was employed in a light, unskilled occupation. *Id.* The VE testified that, for a hypothetical younger person with a bachelor's degree, with the exertional ability to lift twenty pounds occasionally and ten pounds frequently, to sit, stand, and walk six out of eight hours, with an unlimited ability to push and pull, with bilateral gross/fine hand limitations, with no stair, ladder, rope, or scaffold climbing or running, with occasional bending, stooping, crouching,

and crawling, with the ability to get along with others, to understand complex instructions, concentrate and perform complex tasks, and respond and adapt to work place changes, the person would be able to perform past relevant work as a parole worker and case worker. Tr. 638-39. If the same hypothetical person were using a sit/stand option and had a walking ability of four out of eight hours, the person would remain able to perform those two prior occupations. Tr. 639. However, if the hypothetical person were further limited to an exertional ability to lift ten pounds occasionally and five pounds frequently, she would not be able to perform the two prior occupations. *Id.* Under this latter hypothetical, the person would have no transferrable skills due to limited hand use, and would be unable to perform any occupation. Tr. 640.

The VE further testified that, if the hypothetical person experienced pain during two-thirds of a normal workday and was unable to complete tasks in a timely manner, all work at any exertion level would be precluded. *Id.* Further, all work would be precluded if the hypothetical person could sit for only four out of eight hours and stand only two out of eight hours. *Id.* Nor could the hypothetical person remain employed if she were absent from work three work days per month, or had to lie down two to four hours per work day. Tr. 641.

### C.   ALJ's Evaluation and Findings

The ALJ made the following findings with attendant evaluations of the medical evidence:

(1)     Plaintiff meets the insured status requirements of the Act through June 30, 2008. Tr. 25.

(2)     Plaintiff has not engaged in substantial gainful employment since April 13, 2003, the alleged onset date. *Id.*

(3)     Plaintiff has the following severe impairments: depressive disorder/post-traumatic stress disorder, musculoskeletal back pain, carpal tunnel syndrome, non-insulin dependant diabetes mellitus, and obesity. *Id.*

The ALJ noted that, following Plaintiff's motor vehicle accident in January 2002, she underwent extensive CT and x-ray testing. The testing revealed no fractures or acute injuries. *Id.* Subsequent MRI, x-ray and CT testing revealed no abnormalities or injuries, with minimal changes of cervical spondylosis in December of 2002. *Id.* Plaintiff was referred to psychological counseling and physical therapy. Tr. 26. A chiropractor informed Plaintiff in August of 2002 that, although she had made "tremendous progress" under her care, there was no physical explanation for the type of pain Plaintiff continued to report. The chiropractor reported that Plaintiff's "psychological issues" ultimately hindered further progress. *Id.*

Plaintiff began seeing a psychologist in April of 2002. By August of 2002, the psychologist considered Plaintiff's most significant problem to be her emotional issues. In December of 2002, the psychologist noted that Plaintiff had conquered her fear of driving, was walking one to three miles per day, attending church three times a week, doing chores,

and working part-time. When Plaintiff visited a psychiatrist in December of 2003, she reported discontinuing her antidepressant and anti-anxiety medications. The psychiatrist diagnosed a single episode of major depression. *Id.*

In February of 2003, Plaintiff complained of pain and numbness in both hands. An MRI ruled out radiculopathy,[2] and revealed only minimal changes in the cervical spine due to spondylosis. Nerve conduction studies showed bilateral carpal tunnel syndrome. Plaintiff was placed on anti-inflammatories, given wrist braces and splints, and referred to physical therapy. Plaintiff reported her pain as a 3 on a scale of 0 to 10.

In June of 2004, Plaintiff again complained of cervical spinal pain, and reported her pain as a 7 on a scale of 0 to 10. A follow-up MRI showed results similar to that of the December 2002 MRI, with no spinal cord deformity or nerve root irritation. A further MRI in September of 2004 revealed no significant disc bulge or protrusion at any cervical level. *Id.* A minor asymmetric cervical facet arthopathy was noted, and epidural steroid injections were administered. In December of 2004, Plaintiff reported reduction in her cervical pain, and again focused on her hand and wrist pain as her primary complaint.

Post-hearing records from Plaintiff's physician assistant dated September of 2006 reflected his monitoring of Plaintiff's diabetes and hypertension. Tr. 27. The physician assistant noted Plaintiff's additional complaints regarding carpal tunnel syndrome, chronic

---

[2] "Radiculopathy" is a disease of the nerve roots which often manifests as neck or shoulder pain. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1511 (30th ed. 2003).

back pain, and depression, impairments which were not being treated at his clinic. Plaintiff consulted with another physician in July of 2006, who noted her obesity and prescribed new wrist braces and a home exercise program. The physician noted that Plaintiff had a normal range of motion in both of her upper extremities. *Id.*

(4)   Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

The ALJ stated that, under 20 C.F.R. Part 404, Subpart P, Appendix 1, section 1.04, for disorders of the spine resulting in compromise of a nerve root or spinal cord, there must be evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. The ALJ noted that these conditions were ruled out by Plaintiff's MRIs, and that her pain was considered muscular in origin. *Id.*

He further stated that, under section 1.02, major dysfunction of a joint is characterized by gross anatomical deformity and chronic joint pain and stiffness with limited range of motion and supportive medical imaging. The ALJ reported that, although Plaintiff complained that bilateral wrist pain caused her to drop things, her physician observed full strength in all muscle groups in the upper extremities, including hand and arm muscles. The physician diagnosed bilateral cubital tunnel syndrome with a probable degree of carpal tunnel. Plaintiff told her psychiatrist in December 2003 that she had no difficulties with activities of daily living, and that she cooked, did some household chores, went grocery shopping, drove, and attended church twice a week. Tr. 28.

(5)     Plaintiff has the RFC to lift twenty pounds occasionally, ten pounds frequently, and walk four hours of an eight-hour work day. Plaintiff requires a sit/stand option, but cannot climb stairs, ladders, ropes, scaffolds, or run. She can occasionally crouch, stoop, bend, and crawl. She retains unlimited push/pull ability, but has limited bilateral gross and fine dexterity. She retains the ability to get along with others, understand complex instructions, and comprehend and carry out complex tasks. She can respond and adapt to workplace changes and supervision.

The ALJ noted that, at the hearing, Plaintiff testified that she was not currently taking medication or seeking treatment for mental health issues. She recently married, for which she traveled to Kansas, moved to Dallas, then relocated to Huntsville. She currently attends a class twice a week at a local university, and is also completing two on-line classes. She uses her computer at home, and uses a computer at the university for academic purposes. The ALJ noted that, despite these activities, Plaintiff claims that she cannot sit for more than ten minutes, stand comfortably, walk more than 200 feet, or lift more than five pounds. He found that her professed limitations were inconsistent with the medical evidence and her actual activities of daily living.

The ALJ determined that Plaintiff's functional limitations, based on the "B" criteria of the mental impairment listings, were mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. He further

considered Plaintiff's obesity in formulating her RFC, and its effect on her ability to perform routine movement and necessary physical activity within the work environment. Tr. 28. The ALJ noted that Plaintiff's MRIs and x-rays revealed only mild disease controlled with treatment. Her physicians were pleased with her progress despite her obesity.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. 29. He afforded the physician assistant's opinion minimal weight, as he is a "non-acceptable medical source" for establishing the existence of a medically determinable impairment, and his care was limited to Plaintiff's diabetes, hypertension, and obesity.

(6) Plaintiff is capable of performing past relevant work as a parole officer and case worker, both of which are light, skilled occupations. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 29.

The ALJ noted that the VE testified that, in comparing Plaintiff's RFC with the physical and mental demands of this work, Plaintiff could return to her past work as a parole officer and case worker.

(7) Plaintiff has not been under a disability from April 13, 2003, through November 11, 2006, the date of the ALJ's decision.

Finding Plaintiff not disabled under the Act, the ALJ denied her claim for disability and supplemental income benefits. Tr. 30.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *Id.*

Judicial review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether substantial evidence in the record supports the decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's decision satisfies both of these requirements, it must be affirmed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

### A. "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." *Id.* The Commissioner has the responsibility of deciding any conflict in the evidence. *Id.* If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Brown*, 192 F.3d at 496. In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

### B. Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving that he is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423 (d)(3). A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2) a claimant will not be found to be disabled unless he has a 'severe impairment';

(3) a claimant whose impairment meets or is equivalent to an impairment listed in [the listings] will be considered disabled without the need to consider vocational factors;

(4) a claimant who is capable of performing work that he has done in the past must be found 'not disabled'; and

(5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears the

burden of proof on the fifth step. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

### III. ANALYSIS

In her motion for summary judgment, Plaintiff raises the following arguments:

(1) The ALJ failed to consider mental RFC opinions of state agency consultants or his own findings on Plaintiff's mental limitations, such that his RFC finding is not supported by substantial evidence; and

(2) The ALJ erred in finding that Plaintiff can perform her past relevant work.

(Docket Entry No. 13, p. 4.)

Plaintiff argues that, in determining her RFC, the ALJ should have considered and relied on opinions of state agency consultants regarding her mental RFC. In support, Plaintiff directs the Court's attention to the Mental RFC Report completed by state agency consultants J.D. Marler, Ph.D, and Mehdi Sharifian, M.D. Plaintiff specifically refers to psychologist Marler's functional capacity assessment dated January 15, 2004, in which Marler reported that, "The claimant has the ability to understand and carry out *non complex*

*simple instructions*, adapt to routine work environment and get along with co-workers and supervisors." Tr. 351 (emphasis added). In making this assessment, however, the psychologist noted that Plaintiff had an affective disorder, namely, a "major depressive disorder," that did not meet the diagnostic criteria for a depressive syndrome. By assessing a depressive disorder rather than a depressive syndrome, the consultant expressly declined to find that Plaintiff had decreased energy or difficulty concentrating or thinking. Tr. 355. The consultant further determined that Plaintiff had only mild difficulties in maintaining concentration, persistence, or pace. Tr. 362. The consultant expressly noted that Plaintiff's "alleged limitations are not fully supported by evidence in file." Tr. 364.

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling (SSR) 96-6p.[3] The ALJ is not bound by the opinions of these state agency physicians and consultants, but

---

[3] "Although the administrative law judge and the Appeals Council are responsible for assessing an individual's RFC at their respective levels of administrative review, the administrative law judge or Appeals Council must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists. At the administrative law judge and Appeals Council levels, RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s). Again, they are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence."

may not ignore them and must explain the weight given to these opinions in the decisions. SSR 96-6p. In the instant case, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p and *96-6p*." Tr. 28 (emphasis added). Although the ALJ referenced the appropriate SSR, he did not expressly implement the regulation by addressing the weight he assigned to the opinions offered by the state agency medical consultants. This was error, but procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Therefore, the Court must determine whether this error prejudiced Plaintiff.

The record in the instance case shows that the State agency consultant was of the opinion that Plaintiff was able to "carry out non complex simple instructions," an opinion more favorable to Plaintiff's position than the ALJ's finding that she was able to "understand complex instructions, and comprehend and carry out complex tasks." Tr. 28. The ALJ set forth his evaluation of the medical evidence and his analysis of Plaintiff's own testimony, but did not address the State agency consultant's opinions insofar as those opinions differed from his own determinations of Plaintiff's RFC. It may well be that the ALJ would accord little weight to the state agency's opinions, and make no change in his ultimate disposition of Plaintiff's claim. That evaluation, however, is not for this Court to make, and Plaintiff was at least potentially prejudiced by the ALJ's error. As these state agency opinions address

whether Plaintiff can or cannot perform her past relevant work, a remand is necessary so that the ALJ may expressly comply with SSR 96-6p. In remanding the case for this limited purpose, the Court expresses no agreement or disagreement with the ALJ's finding that Plaintiff was not disabled.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for summary judgment (Docket Entry No. 13), **DENIES** Defendant's motion for summary judgment (Docket Entry No. 14), and **REMANDS** the decision of the ALJ for further proceedings not inconsistent with this opinion.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 26th day of March 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE